GOLD STAR CO., LTD., et
al., Plaintiffs,

v.

UNITED STATES, Defendant,

Zenith Electronics Corporation,
Defendant–Intervenor,

Independent Radionic Workers of Amer-
ica, et al., Defendants–Intervenors.

SAMSUNG ELECTRONICS CO., LTD.,
et al., Plaintiffs,

v.

UNITED STATES, et al., Defendants,

Zenith Electronics Corporation,
Defendant–Intervenor,

Independent Radionic Workers of Amer-
ica, et al., Defendants–Intervenors.

Court Nos. 86–11–01438, 86–12–01636,
86–11–01448 and 87–01–00021.

United States Court of
International Trade.

July 29, 1988.

Dow, Lohnes & Albertson, Michael P. House, William Planert, William Silverman, Leslie H. Wiensenfelder, Ryan Trainer and Douglas J. Heffner, Washington, D.C., for Gold Star Co., Ltd., plaintiffs.

Arnold & Porter, Thomas B. Wilner, Suk-han Kim, M. Howard Morse, Jeffrey M. Winton, Grant E. Finlayson, Sarah J.C. Reynolds and Evan T. Bloom, Washington, D.C., for Samsung Electronics Co., Ltd., plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Elizabeth Seastrum, of counsel: Robert E. Nielsen, Attorney-Advisor, Office of the Chief Counsel for International Trade, U.S. Dept. of Commerce, Washington, D.C., for defendants.

Frederick L. Ikenson, Frederick L. Ikenson, J. Eric Nissley and Larry Hampel, Washington, D.C., for Zenith Electronics Corp., defendant-intervenor.

Collier, Shannon, Rill & Scott, Paul D. Cullen, Laurence J. Lasoff and Mary T. Staley, Washington, D.C., for Independent Radionic Workers of America, et al., defendants-intervenors.

## OPINION

TSOUCALAS, Judge.

This consolidated action is before the Court on plaintiffs' (Gold Star Co. Ltd., et al., and Samsung Electronics Co., Ltd., et al.) (hereinafter "Gold Star" and "Samsung" respectively) motion for summary judgment on the administrative record pursuant to Rule 56.1 of the Rules of this Court. Plaintiffs challenge the legality of the Department of Commerce, International Trade Administration's ("ITA" or "Commerce") scope clarification ruling. Public Record Documents 13, 15 (hereinafter "P.R. Doc. ____."). The ruling included separately imported color picture tubes ("CPTs") and printed circuit boards ("PCBs"), when subsequently assembled together, within the scope of the antidumping duty order concerning Color Television Receivers from Korea, 49 Fed.Reg. 18,336 (Dep't Comm. 1984) (antidumping duty order) (hereinafter "CTV Order"). Defendants oppose plaintiffs' motion contending that Commerce based its decision upon substantial evidence in the record and did nothing more than lawfully clarify the scope of the existing CTV Order.

### Background

Commerce and the United States International Trade Commission ("ITC"), in separate investigations, determined that color television receivers from Korea were being sold at less than fair value and were materially injuring a United States industry. 49 Fed.Reg. 18,336–37. On June 1, 1984, Samsung submitted a letter to Commerce requesting a binding determination as to the applicability of the CTV Order to the importation of certain television components and subassemblies. P.R. Doc. 1. On January 9, 1986, Commerce directed Customs officials to suspend liquidation of, but not

collect cash deposits on, printed circuit boards [1] and color picture tubes pending resolution of whether those items were covered by the CTV Order. See P.R. Docs. 13–15. Commerce subsequently notified the interested parties on January 23, 1986 of the suspension of liquidation and afforded the parties an opportunity to respond via comments submitted by February 5, 1986 on any matters they wished considered. See P.R. Doc. 2. Plaintiffs and intervenors filed timely comments.

Commerce determined it had sufficient information and the authority to clarify the CTV Order based on the comments it had received from the interested parties. The comments submitted to Commerce contained the relevant excerpts from and references to documents Commerce allegedly had taken into consideration in making its less than fair value determination, as well as the injury determination phase of the investigation conducted by the ITC.

On October 20, 1986, Commerce informed plaintiff Gold Star that printed circuit boards and color picture tubes when subsequently assembled, whether imported together or separately, were within the scope of the CTV Order. P.R. Doc. 13. A comparable letter dated November 21, 1986 was sent to Samsung. P.R. Doc. 15.

Pursuant to its scope clarification, Commerce, on October 31, 1986, directed all Customs officials to collect cash deposits on printed circuit boards and color picture tubes covered by the clarified CTV Order. P.R. Doc. 14.

### Discussion

This Court may review a determination by Commerce as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing antidumping duty order. 19 U.S. C. § 1516a(a)(2)(B)(vi) (Supp. II 1984). Commerce's determination will be sustained if it is supported by substantial evidence in the record and is otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B). "Substantial evidence is more than a mere scintilla. It means such

1. The contents of a printed circuit board are described in P.R. Docs. 2, 14.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Matsushita Electric Industrial Co. v. United States,* 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984).

In the case at bar, Commerce originally described the merchandise covered under the CTV Order as all "color television receivers, complete or incomplete ... regardless of tariff classification." 49 Fed.Reg. at 18,337; *see also* P.R. Doc. 1 at 3. The scope clarification letter included within the scope of the CTV Order, color picture tubes and printed circuit boards "entered together or on *separate* entries" for subsequent assembly into color television receivers. P.R. Docs. 13, 15 (emphasis added). The issue is whether the PCBs and CPTs are of the class or kind of merchandise properly included within the scope of the CTV Order.

■ The ITA has the authority to clarify and define the scope of an antidumping duty determination. *Diversified Products Corp. v. United States,* 6 CIT 155, 159, 572 F.Supp. 883, 887 (1983). However, while the ITA may clarify the dumping determination, it does not have the authority to change or modify the original determination. *Alsthom Atlantique v. United States,* 4 Fed.Cir. (T) 71, 78, 787 F.2d 565, 571 (1986); *Kyowa Gas Chemical Industry Co. v. United States,* 7 CIT 138, 140, 582 F.Supp. 887, 889 (1984); *Royal Business Machines, Inc. v. United States,* 1 CIT 80, 86–87, 507 F.Supp. 1007, 1013 (1980), *aff'd,* 69 CCPA 61, 669 F.2d 692 (1982).

To determine whether Commerce's scope letter is a proper clarification of the CTV Order, the Court must examine each stage of the statutory proceedings:

the final order must express the result of the previous determinations without alterations and neither the Commerce De-

partment, as the administering authority, nor the Customs Service, by exercise of its classification authority, could legally change the results of the less than fair value and injury determinations or modify the facts or legal conclusions on which those determinations depended.

*Royal Business Machines,* 1 CIT at 86–87, 507 F.Supp. at 1013.

■ At each stage of the investigatory proceedings, the importations subject to antidumping duties were defined as "color television receivers, complete or *incomplete.*"[2] An incomplete receiver was characterized in the ITC investigations as: "a color picture tube [CPT] and a printed circuit board [PCB] or ceramic substrates with components assembled thereon...." P.R. Doc. 7 at 5 (citing Color Television Receivers From the Republic of Korea and Taiwan, USITC Pub. 1514, Inv. Nos. 731–TA–134, –135 (Final) at A–2 to A–3 (April 1984) (hereinafter "ITC Final Determination")).

Plaintiffs, however, contend that the class or kind of merchandise subject to the CTV Order does not include *separately* imported subassemblies and components such as PCBs and CPTs. *Gold Star's Brief in Support of Motion for Judgment on the Agency Record* (corrected public version) at 50–51 (hereinafter *"Gold Star Brief* at _____."); *Plaintiffs' Samsung Memorandum in Support of Their Motion for Judgment Upon the Administrative Record* at 37–38 (hereinafter *"Samsung Memorandum* at _____."). They argue that a separately imported PCB or CPT is outside the scope of the investigations because neither, by itself, constitutes an incomplete receiver. *Gold Star Brief* at 52, 54–55; *Samsung Memorandum* at 50–51.

The Court, however, finds that separately imported PCBs and CPTs which are subsequently assembled into color television receivers are of the class or kind of mer-

**2.** *See* P.R. Doc. 13 at 1; P.R. Doc. 5 at 7–8 (the ITC's description of products subject to the investigation, Color Television Receivers From the Republic of Korea and Taiwan, USITC Pub. 1514, Inv. Nos. 731–TA–134, –135 (Final) at A–2, A–3 (April 1984)); P.R. Doc. 7 at 4 (49 Fed.Reg.

50,420 (Dep't Comm.1984) (final results of administrative review); 49 Fed.Reg. 18,336 (Dep't Comm.1984) (final antidumping duty order); 49 Fed.Reg. 7620 (Dep't Comm.1984) (final LTFV determination); 48 Fed.Reg. 48,487 (Dep't Comm.1983) (prelim. determination)).

chandise intended to be covered by the CTV Order. Ample evidence was developed during the course of the proceedings which supports the conclusion that Commerce contemplated assembly of PCBs and CPTs into CTVs within the United States. The ITC, for example, stated that "[i]ncomplete color television receivers ... are imported by U.S. producers and assembled into complete receivers in U.S. production facilities." ITC Final Determination at A–2; *see also Samsung Memorandum* at 20. Furthermore, the definition of incomplete receivers consisted of CPTs and PCBs *"which when assembled* are capable of receiving a television signal." ITC Final Determination at 3–4; Color Television Receivers From the Republic of Korea and Taiwan, USITC Pub. 1396, Inv. Nos. 731–TA–134, –135 (Preliminary) at 4 (June 1983) (hereinafter "ITC Preliminary Investigation"); *see also Samsung Memorandum* at 20; P.R. Doc. 12 at 20–22 (emphasis added). Therefore, the PCBs and CPTs are within the scope of the CTV Order whether imported in assembled form or imported separately and assembled together in the United States.

Plaintiffs cannot avoid the imposition of antidumping duties merely by bifurcating their shipments. The Court will not allow such a transgression upon the antidumping duty laws of this country. The object of the dumping laws is to protect domestic producers against imported merchandise which "is being, or is likely to be, *sold* in the United States at less than its fair value...." 19 U.S.C. § 1673(1) (1982) (emphasis added). The present merchandise is *sold* on the U.S. market not as a PCB nor as a CPT, but as a color television receiver; the object of the original antidumping duty order. If the Court were to allow separate importations of PCBs and CPTs (subsequently assembled together) to escape the purview of the CTV Order, the domestic industry would continue to suffer the injurious consequences of dumped goods.[3]

Plaintiffs Gold Star admit that "[w]hen an incomplete receiver is imported, i.e., a CPT imported *together with* a PCB, the merchandise is within the scope of the ITC's determination and antidumping duties can be imposed." P.R. Doc. 5 at 9–10 (emphasis in original). Gold Star argues, however, that it is not subject to the CTV Order because the value added by its American operations is significant and the ITC held it to be a U.S. domestic producer of CTVs. *Gold Star Brief* at 6–7 (citing ITC Final Determination at 8–9).

The Court fails to see the relevance of Gold Star's argument. The clarification letter explicitly stated that the PCBs and the CPTs covered are those which are imported from Korea and are subsequently assembled into color television receivers. P.R. Docs. 13, 15. Since Gold Star has conceded that its PCBs and CPTs, when imported together, are incomplete receivers within the scope of the CTV Order, Gold Star cannot escape the imposition of antidumping duties by any subsequent value

---

**3.** The position adopted by the Court is consistent with the General Agreement on Tariffs and Trade which defines a dumped product as being one which is *"introduced into the commerce of another country* at less than its normal value...." Agreement on the Implementation of Article VI of the General Agreement on Tariffs and Trade (antidumping code), April 12, 1979, art. 2, para. 1, 31 U.S.T. 4919, 4924–25, T.I.A.S. No. 9650 (entered into force Jan. 1, 1980). The products here are "introduced into the commerce" of the United States as CTVs, after a finding by the ITC that imports of Korean receivers, complete and incomplete, were injuring U.S. industry.

The European Economic Community has recently adopted measures designed to prevent this type of circumvention. Their new Regulation allows the Community to impose antidumping duties on products which are "introduced into the commerce of the Community after having been assembled or produced in the Community...." Regulation 1761/87, art. 1, O.J. L 167/9 (1987). However, several restrictions to the Regulation apply: the assembly or production must have been carried out by a party related to the manufacturer; the assembly or production operation must have substantially increased after commencement of the antidumping investigation; and the value of the parts or materials used must have comprised at least 50% of the aggregate value of the parts or materials used. *See id.* For an excellent discussion of the topic, *see* Steenbergen, *Circumvention of Antidumping Duties by Importation of Parts and Materials: Recent EEC Antidumping Rules,* 11 Fordham Int'l L.J. 332 (1988).

added to the incomplete receivers.[4]  If Gold Star combines a Korean PCB with a Korean CPT, then it is an incomplete receiver as defined by Commerce.  Commerce has evaluated the effect of Korean incomplete receivers on the U.S. market and found them to have materially injured U.S. industry.  Therefore, the value added by Gold Star does not affect the treatment of PCBs and CPTs subsequently assembled together under the CTV Order.

Plaintiffs further contend that separate importations of PCBs and CPTs were specifically excluded by the ITC and refer to the following language to support their contention: "imported subassemblies and components for television receivers ... are outside the scope of these investigations," *see Gold Star Brief* at 13 (quoting ITC Preliminary Investigation at A–40); and "[v]arious imported subassemblies and components used in the manufacture of color television receivers are not subject to these investigations."  ITC Final Determination at A–3.  However, Commerce was excluding from the scope of the CTV Order those PCBs and CPTs which are used as replacement parts, entering the U.S. market as PCBs or CPTs, not CTVs.[5]

Plaintiffs Samsung claim that the definition of the product adopted a "capable of receiving a broadcast signal" standard which was embodied in the petition:

> The imported articles under investigation are complete and incomplete color television receivers (CTVs) imported from Taiwan and Korea.  Complete receivers are fully assembled and ready to function, whereas incomplete receivers and kits consist of a color picture tube *and* printed circuit-board or ceramic substrate with components, *which when assembled*

*are capable of receiving a television signal.*

ITC Final Determination at 3–4;  *see also Samsung Memorandum* at 20 (emphasis added).

Samsung claims its merchandise, even if it had been imported together, was incapable of receiving a broadcast signal and therefore outside the scope of the CTV Order.

Samsung, however, in describing its operations in the U.S., clearly indicated that its operation fell under the assembly in U.S. production facilities terminology utilized by the ITC in defining the scope of the investigation.  *See* C.R. Doc. 4.[6]

Moreover, the above definition does not specify what is needed in order to form an incomplete receiver; it merely states that an incomplete receiver consists of PCBs and CPTs "which when assembled are capable of receiving a television signal."  ITC Final Determination at A–2 to A–3.  This ambiguity is adequately corrected by the scope clarification letter.  Something which is "incomplete" needs additions in order to make it complete, and an incomplete receiver needs something added in order to make it a complete receiver.  Since the definition of an incomplete receiver never specified whether PCBs and CPTs assembled, *by themselves*, must be capable of receiving a television signal, or whether other parts need be added, Commerce could properly resolve the ambiguity by issuing the scope clarification letter.

Plaintiffs have misconstrued the intent of the ITC determinations.  The language throughout the proceedings encompassed incomplete receivers assembled in the United States.  The clarification letter applies only to PCBs and CPTs which are subse-

---

**4.**  The record reflects that a PCB and a CPT together comprises the majority of the value of a CTV.  *See* Confidential Record Documents 1, 2 (hereinafter "C.R. Doc. ____.").

**5.**  Defendants correctly point out that the ITC's description of the products covered (incomplete receivers consisting of a color picture tube and printed circuit board which when assembled are capable of receiving a television signal) would be rendered meaningless if PCBs and CPTs were excluded from the scope of the CTV Order by

the language which excludes "various imported subassemblies and components."  *See Defendant's Memorandum in Opposition to Plaintiffs' Motions for Judgment Upon the Administrative Record* at 26–27.

**6.**  Samsung's imported subassemblies contained "[a]ll components necessary for the production of finished color televisions, with the exception of the picture tube ..." which was imported separately.  P.R. Doc. 1 at 2; *see also* P.R. Doc. 2; C.R. Docs. 2, 4.

quently assembled to form CTVs; it does not apply to those items sold independently as PCBs and CPTs, or to those items subsequently combined with U.S. parts. The exclusion language referred to by plaintiffs is directed at CPTs and PCBs which are sold to unrelated purchasers as individual components for replacements or for assembly with American made components.

In the questionnaires issued by Commerce to importers and producers, plaintiffs claim the scope of the investigations included only color television receivers, complete or incomplete, as provided in the TSUS item numbers 685.11 and 685.14, and that the following definition of "incomplete television receiver" in the questionnaires utilized by the ITC during the investigation explicitly excluded separate imports of CPTs and PCBs:

> Assemblies ... *which consist at least of, or are covered in the same import entry with,* a color picture tube *and* a printed circuit board or ceramic substrate, with components assembled thereon, designed to perform the intermediate frequency amplification functions or the picture and audio demodulation functions of a color television receiver, all the foregoing provided for in TSUS item 685.14.

*Samsung Memorandum* at 19–20 (quoting Importers' Questionnaire at 4; Producers' Questionnaire at 5); *see also Gold Star Brief* at 17–18; P.R. Doc. 12 at 22 (emphasis supplied by plaintiffs Samsung). But the passage is written in the disjunctive, thus yielding the following interpretation for the merchandise covered: "Assemblies [subject to the scope of the investigations are those] which consist at least of ... a color picture tube [CPT] and a printed circuit board [PCB]...." *Id.*

Plaintiffs also state that Commerce's decision was not based on substantial evidence since the administrative record contained only nineteen documents and lacked other relevant material, *i.e.*, the petition, the record of the initial investigations, and the injury and LTFV determinations. *Samsung Memorandum* at 33–34.

The Court finds that the record was adequate to support the conclusion reached by Commerce; it contained the relevant excerpts from and references to the proceedings which Commerce used to determine the scope of the CTV Order. The evidence was within what a "reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison,* 305 U.S. at 229, 59 S.Ct. at 217.

### Conclusion

The Court denies plaintiffs' motion for summary judgment on the administrative record and finds in favor of the defendants. The scope clarification letter issued by Commerce is held to be a proper clarification of the CTV Order and based on substantial evidence. Therefore, merchandise consisting of CPTs and PCBs imported from Korea, when subsequently assembled together to form color television receivers, is included within the scope of the CTV Order.