**SAMSUNG ELECTRONICS CO., LTD.,** Samsung Electronics of America, Inc. and Samsung International, Inc.,

**and**

Goldstar Co., Ltd., Goldstar Electronics International, Inc. and Goldstar of America, Plaintiffs–Appellants,

v.

The **UNITED STATES,** U.S. Department of Commerce, Malcolm T. Baldrige, Secretary of Commerce, Bruce Smart, Under Secretary of Commerce, Paul Freedenberg, Assistant Secretary for Trade Administration, Gilbert B. Kaplan, Deputy Assistant Secretary for Import Administration, U.S. Customs Service and William Von Raab, Commissioner of Customs, Defendants–Appellees,

Zenith Electronics Corporation, Defendant–Appellee,

Independent Radionic Workers of America, International Brotherhood of Electrical Workers, International Union of Electronic, Electrical, Technical, Salaried and Machine Workers, AFL–CIO and Industrial Union Dept., Defendants–Appellees.

Nos. 89–1023, 89–1042.

United States Court of Appeals, Federal Circuit.

May 10, 1989.

**1428**

Michael P. House, Dow, Lohnes & Albertson, Washington, D.C., argued for plaintiffs-appellants Goldstar Co., Ltd., et al. With him on the brief were William Silverman and R. Will Planert. Sukhan Kim, Thomas B. Wilner and Jeffrey M. Winton, Arnold & Porter, Washington, D.C., were on the brief for plaintiffs-appellants Samsung Electronics Co., Ltd., et al.

Elizabeth C. Seastrum, Dept. of Justice, Washington, D.C., argued for defendants-appellees. With her on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief were Michael A. Levitt, Acting Gen. Counsel, Stephen J. Powell, Chief Counsel and Mark J. Sadoff, Atty.–Advisor, U.S. Dept. of Commerce, of counsel. Larry Hampel, of Frederick L. Ikenson, P.C., Washington, D.C., argued for defendant-appellee Zenith Electronics Corp. With him on the brief were Frederick L. Ikenson and J. Eric Nissley. Paul D. Cullen and Laurence J. Lasoff, Collier, Skannon, Rill & Scott, Washington, D.C., were on the brief for defendants-appellees Independent Radionic Workers of America, et al.

Before RICH and MAYER, Circuit Judges, and NICHOLS, Senior Circuit Judge.

PER CURIAM.

## DECISION

The judgment of the United States Court of International Trade, 692 F.Supp. 1382 (1988), upholding the determination of the Department of Commerce that separately imported color picture tubes and printed circuit boards, when subsequently assembled together, are within the scope of the antidumping duty order covering complete and incomplete color television receivers from Korea, 49 Fed.Reg. 18,336 (Dep't Comm.1984), is affirmed.

## OPINION

Appellants Samsung and Goldstar raise an issue on appeal that was not expressly covered in the trial court's opinion. We address it here; on all other issues we affirm on the basis of the court's opinion, which we adopt.

Appellants assert that Commerce defined the scope of its antidumping duty order by reference to specific tariff classifications. Pointing out that the classifications under which color picture tubes and printed circuit boards are dutiable are not among those enumerated, appellants argue that they are not, therefore, properly within the scope of the order.

We have no reason to believe that Commerce did not intend to include items dutiable under the specified classifications within the scope of the order. Contrary to appellants' contention, however, we likewise have no reason to believe Commerce intended to limit the order to those items. Indeed, Commerce could not have been clearer that its intention was precisely the opposite: "This investigation is intended to cover all color television receivers regardless of tariff classifications." 49 Fed.Reg. at 18,337. In any event, it is eminently reasonable for Commerce to omit the separate classifications of tubes and boards: all parties agree that, when unassembled,

these items do not constitute "color television receivers, complete or incomplete." *Id.*

All parties also agree that, "when assembled," ITC Final Determination at 3–4, tubes and boards do constitute incomplete receivers. Appellants would have us read "when assembled" as "when imported assembled," or at least "when covered on the same import entry," thus confining the temporal ambit of the word "when" to the moment of importation. But this construction artificially restricts the plain meaning. In classification cases a higher duty can be imposed where the importer's intention is to combine two separate components, after importation, to make an article that is classified at the higher duty. *See Isaacs v. Jonas,* 148 U.S. 648, 653, 13 S.Ct. 677, 679, 37 L.Ed. 596 (1892). The rule is that "[w]hen it is found that the article imported is in fact the article described in a particular paragraph of the tariff act," separate packaging of parts of the article "to avoid the specified duty on the article as a whole," "is simply a fraud on the revenue and cannot be permitted to succeed." *United States v. Citroen,* 223 U.S. 407, 415, 416, 32 S.Ct. 259, 260, 260, 56 L.Ed. 486 (1912). We see no reason for a different rule here.

AFFIRMED.

NICHOLS, Senior Circuit Judge, dissenting.

Respectfully, I dissent. The result-oriented court decision may be less favored now than a few years ago, but doubtless never will become extinct. It is a temptation to which all of us must occasionally yield unless someone obnoxiously takes on himself the role of little boy in the "emperor has no clothes" fable.

What is happening I shall briefly state, and then continue with the law. In 1983, the Department of Commerce, on complaint of various unions, and upon reviewing their petition, initiated an antidumping investigation, after which it found reasonable ground to believe that color television receivers from Korea were being sold in the United States at less than fair value. It specified what was being sold: "color television receivers complete or incomplete" and under what tariff paragraphs they were classified. There is administrative precedent on what an "incomplete" receiver is. Unfortunately, Commerce failed to specify certain important component parts, when imported separately for later incorporation in this country into complete receivers: "color picture tubes" (CPT) and "printed circuit boards" (PCB). They are "incomplete" receivers only if joined together; all agree as to that. There was then, and has been since, a substantial import trade in these important components. They are classified *eo nomine* under Tariff Schedules of the United States (TSUS) items 687.35 (CPT) and 685.1564 (PCB). Through somebody's blunder, these items were left out when the Commerce Department specified the TSUS classification numbers of the sets and components that were subjects of the investigation under 19 U.S.C. § 1673a(c)(2). By the later-strained effort to correct the mistake, I gather it is very serious and undercuts the effect the proceeding has had, or was hoped to have, on color televisions imported complete, or incomplete, or in parts, from Korea, at less than fair value. The motivation for a result-oriented decision is great. It is not denied that 1986 would have been too late to amend the decision to add items initially left out and not included in the investigation. At any rate, after repeatedly making noises that seemed to exclude CPT's and PCB's from the investigation, if imported separately, the Commerce Department, in 1986, reversed its field and attempted to make it appear in a "Scope Clarification Order" that CPT's and PCB's have been intended and were covered all along, at least when used in this country in the manufacture of new sets and not for repair or replacement. The Court of International Trade has put on its blinders and cannot perceive the manifest illegality of enlarging the scope of the proceeding in this drastic manner, and now we have joined the club.

There can be no doubt that the Koreans import CPT's and PCB's in entries separate from other components and from each oth-

er so as to distance them, legally, from the complete and incomplete television receivers which are the subjects of the proceeding, but there is no suggestion that this is evasion rather than avoidance of dumping duty. Until now there has been no challenge to the proposition that an importer enjoys the privilege of fashioning and packaging his goods for import in the form and manner that, absent deception, will obtain for him the most favorable tariff treatment. *United States v. Citroen*, 223 U.S. 407, 32 S.Ct. 259, 56 L.Ed. 486 (1912). By TSUS General Headnote 10(ij)—

A provision for "parts" of an article covers a product chiefly used as a part of such article, but does not prevail over a specific provision for such part.

There can be no doubt, therefore, that CPT's and PCB's are dutiable under 687.35 and 685.1564, respectively. 687.35 reads:

Television Picture Tubes

Color * * *

Other * * *

685.1564 reads:

Not having a picture tube:.

Printed circuit boards * * *.

And by *United States v. Citroen*, what is meant to be done with them after importation does not matter.

It is equally clear the term "incomplete receiver" must embrace in an importation both a CPT and a PCB. See Part 5, statistical headnote 8.

The Commerce Department's Final Determination notice of March 1984, 49 Fed. Reg. 7620, 7621, lists the scope of the determination. It reads:

The merchandise covered by this investigation is color television receivers, complete or incomplete. This investigation is intended to cover all color television receivers regardless of tariff classifications. [But nothing said about parts.] The merchandise is currently classifiable under [listing 13 TSUS items, none of them 687.35 or 685.15 with 64 or any other subhead].

The Court of International Trade relied on the fact the CPT's and the PCB's were going to be combined at some date after importation, but under the *Citroen* doctrine that fact does not matter.

Actually the Court of International Trade and its defenders among the parties rely, expressly or *sub silentio*, on some supposed rule that Commerce may make its own tariff classification for antidumping cases and is not required to use those devised for conventional duty cases. I do not doubt that Commerce could devise its own language if it wished, and if it made itself understood it would not matter if it deviated from conventional tariff classification rules. But it did not choose to do so. It saw fit to identify what its decision covered by reference to TSUS items, the standard nomenclature of conventional tariff classification. Why? For the obvious reason it wanted customs officials to know on what entries to suspend liquidations. If you speak a sentence in French, you must expect to be understood as a Frenchman in Paris would be. It is no time to introduce words given your own subjective meaning on the *Alice in Wonderland* model.

Just as there was no notice that CPT's and PCB's imported separately were included in the investigation and resultant determination, so also there was none that the classification of CPT's and PCB's as in or out of the case was to be made according to their end use in the United States. This was contrary to the usual customs rule, *United States v. Citroen, supra,* and if it was to be done, notice should have been given. We are referred to no provision of statute, regulation, or case law, making such a result automatic.

I would never represent that the former customs courts were impeccable in their approach to customs law, but one fault they avoided. They did not indulge in result-oriented jurisprudence. If they erred in that regard, it was in the opposite direction. At times importers, especially in pre-TSUS days, were "stuck" with duties far higher than they had anticipated, because of some overlooked aspect of the merchandise that was economically unimportant but controlled its tariff classification and rate of duty. On the other hand, importers occasionally discovered some

loophole to avoid high duties intended to apply to their products, by altering them in some respect, insignificant except for its tariff effect. This state of uncertainty was considered to be a "nontariff barrier." In both cases, courts exhibited a fine disregard for the benefit or ill their interpretations caused the body politic. TSUS attempted to, and largely succeeded in, correcting this by taking tariff classification away from the courts with an enormous list of *eo nomine* classifications that could not be ignored: at least, could not be until now. To say that an *eo nomine* classification of a part can be ignored, and the part, because of its end use treated as the whole, unfinished, is a shattering blow to post-TSUS jurisprudence, and its effort to remove "nontariff barriers."

Customs law has ceased to be a matter of domestic interest only, as Congress so disastrously treated it in 1930, with the odious Smoot–Hawley Tariff Act of that year. It is a matter of international concern. This is particularly true of antidumping and countervailing duties. They have long been matters dealt with in the GATT, and it has been difficult to reconcile our, at times, drastic laws with internationally recognized standards of fair dealing. Congress has undertaken to master this problem in part by codifying procedures other countries can notice and rely on, and in part by "judicializing" the process so that procedural, as well as substantive, rights can be recognized and enforced in courts.

It was doubtless a mistake to omit CPT's and PCB's, imported separately, from the 1983 proceeding respecting Korean color televisions. It was, mistake or not, a decision businessmen must have relied on in making business decisions, and Commerce must live with it. It is a worse mistake, especially in light of the background, to impute to the original authors of the investigation an intent they never expressed until 1986, and then in order to correct the mistake they made in 1983. Result-oriented jurisprudence could not find a worse place in which to raise its head.