MIDLAND EXPORT LTD., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 91–07–00499

(Dated April 8, 1992)

*Perkins Coie*, (Leonard E. Santos, Barry J. Reingold), for plaintiff.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Vanessa P. Sciarra*), *David W. Richardson*, Of Counsel, Attorney-Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.
*Squire, Sanders & Dempsey*, (William D. Kramer, Ritchie T. Thomas, Dana M. Stein), for defendant-intervenors.

## Memorandum Opinion

Goldberg, *Judge:* This action comes before the court on plaintiff's motion for judgment upon the agency record and request for remand. Plaintiff challenges the Department of Commerce, International Trade Administration's ("ITA") determination in *Silicon Metal From the People's Republic of China. See* 56 Fed. Reg. 18,570 (1991) (final determination). The court sustains the ITA's determination and holds that it was supported by substantial evidence.

## Background

On August 24, 1990, six domestic producers of silicon metal filed an antidumping duty petition which alleged, in part, that imports of silicon metal, other than semiconductor grade, from the People's Republic of China (PRC)[1] were being sold in the United States at less than fair value. The PRC is a country with a nonmarket economy. The petition calculated a 123.2 percent dumping margin, based on the difference between the United States price and the foreign market value of silicon metal from the PRC. In determining foreign market value, the petition valued the factors of production needed to produce silicon metal in the PRC based on costs of production in India.

The ITA subsequently initiated its antidumping investigation regarding PRC silicon metal. *See Silicon Metal From the People's Republic of China*, 55 Fed. Reg. 38,717 (1990). In the notice of initiation of investigation, the ITA adjusted the foreign market value which increased the dumping margins to between 134.73 and 139.49 percent.

The ITA then unsuccessfully attempted to identify PRC producers and exporters of silicon metal through direct contact with consular offices in the PRC. Next, the Commercial Attache of the PRC Embassy contacted the ITA and indicated that the China Chamber of Commerce of Metals, Minerals, and Chemical Importers and Exporters could provide the ITA with the identity of all PRC exporters of silicon metal. However, in response to its request, the ITA did not receive a reply from the China Chamber of Commerce.

After that, in a third effort, the ITA forwarded questionnaires directed toward all state owned producers and exporters of silicon metal to the PRC Embassy with an accompanying letter explaining that the government was the appropriate respondent since the PRC was a non-market economy. The letter asked that the questionnaire be disseminated among the silicon metal industry in the PRC and requested a timely consolidated response from the PRC Embassy.

Two weeks later, the ITA met with Commercial Attache of the PRC Embassy who indicated that no progress had been made toward identifying appropriate producers and exporters.

At the request of one individual PRC producer, the ITA granted an extension of time in which to file the consolidated response. The ITA also

---

[1] The petition also sought the imposition of antidumping and countervailing duties with respect to silicon metal manufactured in Brazil, and antidumping duties regarding silicon metal produced in Argentina.

forwarded a letter to the PRC Embassy seeking the status of the questionnaires. In that letter, the ITA reiterated that if the Embassy did not meet the extended deadline or request another extension, the ITA would use best information available as required under the statute[2].

The ITA also met personally with PRC Embassy officials to discuss the Embassy's inability to provide the requested information. During that meeting, the PRC did not seek another extension.

On January 18, 1991, two months after the expiration of extended deadline, the Embassy finally tendered its reply to the ITA. The submitted response was incomplete, and included consolidated information concerning only two exporters and a partial response regarding three others. The ITA appropriately removed these replies from the record because of their untimeliness.

The ITA issued its preliminary determination on January 31, 1991. *See Silicon Metal From the People's Republic of China* 56 Fed. Reg. 4596 (1991). In the preliminary determination, the ITA stated that it relied on best information available because of the absence of evidence in the record. As best information available, it used the highest dumping margin of 139.49 listed in the notice of initiation, which was based on the petition.

After issuing its preliminary determination, the ITA conducted hearings concerning the use of India as a surrogate country, and accepted briefs on this point as well. The ITA then issued its final determination, in which it again noted that it was basing its decision on best information available because of the lack of information from the PRC. As best information available, it also used the highest dumping margin listed in the notice of initiation. (*Silicon Metal From the People's Republic of China*, 56 Fed. Reg. 18,570 (1991).)

Plaintiff, a United States importer of silicon metal from the PRC, challenges only one aspect of the final determination. Plaintiff asserts that the ITA erred in relying on the petition as best information available because the petition does not contain sufficient evidence to support a finding that India is a proper surrogate for the PRC. Specifically, there is insufficient evidence to show that India is a significant producer of silicon metal. Plaintiff also alleges that the ITA must make an express finding that India was a significant producer, which in plaintiff's opinion, was not done here. Finally, it asserts that the ITA improperly used the highest calculated dumping margin as best information available.

DISCUSSION

*Use of India as a Significant Producer of Silicon Metal:*

The court first addresses plaintiff's claim that the ITA's use of the petition as best information available was improper.

---

[2] 19 U.S.C. 1677e(c) (1988) provides guidelines for the use of best information available as follows:

> In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

It is uncontested that the notice of initiation and petition stated that pursuant to 19 U.S.C. § 1677b (1988), the PRC was a nonmarket economy for purposes of foreign market value calculation. However, 19 U.S.C. § 1677b(c)(1) (1988) provides that where a nonmarket economy is concerned, foreign market value is determined:

> on the basis of the value of the factors of production utilized in producing the merchandise * * *. [T]he valuation of the factors of production shall be based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate * * *.

In valuing factors of production under this section, 19 U.S.C. § 1677b(c)(4) (1988) mandates that the ITA:

> shall utilize, to the extent possible, the prices or costs of factors of production in one or more market economy countries that are—
>
> > (A) at a level of economic development comparable to that of the non-market economy country, and
> > (B) significant producers of comparable merchandise.

Plaintiff now disputes whether the information contained in the petition was sufficient to establish that India satisfied 19 U.S.C. § 1677b(c)(4)(B), and was a significant producer of silicon metal.

An antidumping determination will be overturned only if it is not supported by substantial evidence on the record or otherwise not in accordance with law. 19 U.S.C. 1516a(b)(1)(B) (1988). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.A.R., S.p.A. v. United States*, 14 CIT 409, 741 F. Supp. 936, 939 (1990) (quoting *Gold Star Co. v. United States,* 12 CIT 707, 692 F. Supp. 1382, 1383–1384 (1988) *aff'd*, 873 F.2d 1427 (Fed. Cir. 1989)).

Commerce is given "considerable deference in its interpretation of its statutory authority and the methodology employed in the administration of the antidumping law." *Tehnoimportexport v. United States*, 15 CIT 250, 766 F. Supp. 1169, 1173 (1991). The ITA's determination will not be overturned merely because the plaintiff can produce evidence in support of its own contentions and in opposition to the evidence supporting the agency's determination. *Tehnoimportexport*, 766 F. Supp. at 1173.

Moreover, when the use of best information is challenged, "the question is not whether the "best" of all available information was chosen, but *whether the information chosen by the ITA is supported by substantial evidence on the record." N.A.R., S.p.A.*, 741 F. Supp. at 942 (emphasis added). The material which the ITA may rely on as best information available may be information submitted in support of the petition. *N.A.R., S.p.A.,* 741 F. Supp. at 942.

Consequently, the court finds that its inquiry is restricted to an evaluation of whether the record as a whole, including all material submitted

in support of the petition, contains substantial evidence to establish that India was a significant producer of silicon metal.[3]

The court performed a thorough review of the Administrative Record filed in this case. Based on its review, the court concludes that several documents included in the record contain information concerning India's production of silicon metal. First, the petition states that "[i]n valuing the factors of production, Petitioners have used India as the surrogate country. India is a market economy country that produces silicon metal." (Administrative Record, Public Reel ("Public Reel") at 69.)

Exhibit F to the affidavit of Dr. J.C. Agarwal, filed with the ITA by petitioners on September 6, 1990 in support of the petition, notes that an Indian company, Indian Metals and Ferro Alloys ("IMFA"), produces silicon metal for domestic and export markets. (Public Reel at 336.) Exhibit C to a second Dr. Agarwal affidavit filed by petitioners on September 12, 1990 indicates that two Indian companies, IMFA and Ispat Alloys Ltd., have an annual silicon metal production capacity of 5,000 MT each. (Public Reel at 384.)

In connection with the questionnaires forwarded to PRC producers, the ITA also obtained several documents in its investigation regarding the classifications of silicon metal. One such document, a United States Department of the Interior, Bureau of Mines publication, states that India's production of silicon metal in 1983 was 4,000 short tons, while its yearly capacity in 1983, 1984, and 1990 was 8,000 short tons. (Public Reel at 467.) A second Bureau of Mines report notes India was a silicon producer (Public Reel at 472), and two additional Bureau of Mines tables indicates India's 1988 and 1989 international comparative capacity for production of silicon metal and ferroalloys. (Public Reel at 491, 503.)

Likewise, letters submitted to the ITA by counsel for interested parties Aluminum Smelting and Refining Company, Inc., Timco, and Aluminum Recycling Association, and by counsel for the petitioner states that India maintained a silicon metal plant with the capacity to produce 5,000 tons of silicon metal annually. (Public Reel at 914, 959.) Petitioner's counsel's letter further asserts that India was a significant producer of silicon metal.

Finally, the Rebuttal Brief submitted by Aluminum Smelting and Refining Company, Inc., Timco, and Aluminum Recycling Association notes that according to the Bureau of Mines Yearbook, India was ranked seventeenth worldwide as a silicon metal producer. (Public Reel at 1225.) Exhibit 1 to this Rebuttal Brief establishes that both IMFA and

---

[3] Defendant-Intervenor, however, disagrees and proffers an alternate theory. It contends that the ITA did not calculate the dumping margin using the statutory surrogate methodology. Defendant-intervenor argues that instead the ITA adopted the margin asserted in the notice of initiation and the petition as best information available. Therefore, defendant-intervenor concludes that substantial evidence is present to support the margin found by the ITA in the final determination simply because the notice of initiation and the petition enumerated the dumping margin.

The court does not find defendant-intervenor's reasoning convincing. This court is charged with the responsibility of determining whether the information chosen by the ITA as best information available is supported by substantial evidence on the record. *N.A.R., S.p.A. v. United States*, 741 F. Supp. at 936. In order to meaningfully evaluate whether the dumping margin chosen was sufficiently established, this court must review whether the methodology for its calculation is supported by substantial evidence in the record. This court cannot be satisfied by a superficial reference to a document which lists that margin.

Ispat Alloys Ltd. produce silicon metal. (Public Reel at 1237, 1238.) Moreover, Exhibit 2 states that Ispat Alloys Ltd. was in the process of installing a silicon metal furnace to upgrade its capacity to 22,000 tpy. (Public Reel at 1241.)

Upon review of the evidence before it, the court finds that the issue of whether the record contains substantial evidence to show that India was a significant producer of silicon metal is a close question. The court notes that the record is devoid of the type of extensive, and vastly preferable, material available that supports the ITA's affirmative determination under 19 U.S.C. § 1677b(c)(4)(A) that India's level of economic development was comparable to the PRC's. Nevertheless, the court finds that information included in the record shows that India was a significant producer of silicon metal used both domestically, as well as for export. It had the capacity to produce up to 22,000 tpy and was ranked at least seventeenth worldwide.[4] The court, therefore, determines that substantial evidence does exist in the record to demonstrate that India was a significant producer of silicon metal.

## ITA Finding of Significant Producer:

The court next addresses plaintiff's contention that the ITA, by statute, must make an express finding that India was a significant producer of silicon metal. Plaintiff's argues that this court cannot conduct a meaningful review of the ITA's determination unless the ITA made an explicit determination that all statutory criteria were met.

The court is not persuaded by plaintiff's position. Section 1677b(c)(4) of Title 19 of the U.S. Code states simply that the ITA "shall utilize, to the extent possible" the prices or costs of factors of production of a significant producer of comparable merchandise in a surrogate market economy country, when valuing nonmarket country factors of production. By its plain language, the statute does not require the ITA to make an express finding. Moreover, related statutory provisions clearly enunciate when a finding is necessary. For example, 19 U.S.C. § 1673d(a)(3) provides that ITA final affirmative determinations of dumping which include critical circumstances determinations, shall contain certain specific "findings" regarding the dumping which occurred.[5]

---

[4] Plaintiff also argues to this court that India was not a significant producer of silicon metal because it was ranked seventeenth worldwide while the PRC was classified as sixth. The court does not find this position persuasive. The fact that India produces less than the PRC does not affect the statutory condition that India be a significant producer. Section 1677b(c)(4) of Title 19 of the U.S. Code mandates only that the surrogate country be a significant producer; it does not require that India be a meaningful producer in comparison to the nonmarket economy.

[5] 19 U.S.C. § 1673d(a)(3) (1988) states in full that:

If the final determination of the administering authority is affirmative then that determination, in any investigation in which the presence of critical circumstances has been alleged under section 1673b(e) of this title, shall also contain a *finding* of whether—
(A)(i) there is a history of dumping in the United States or elsewhere of the class or kind of merchandise which is the subject of the investigation, or
(ii) the person by whom, or for whose account, the merchandise was imported knew or should have known that the exporter was selling the merchandise which is the subject of the investigation at less than its fair value, and
(B) there have been massive imports of the merchandise which is the subject of this investigation over a relatively short period. (Emphasis added.)

Additionally, in similar determinations where the ITA used best information available, it did not make an express finding under 19 U.S.C. 1677b(c)(4)(B) that the surrogate market economy country was a significant producer. *See Heavy Forged Hand Tools, Finished or Unfinished, With or Without Handles, From the People's Republic of China,* 56 Fed. Reg. 241 (1991) (final determination); *Industrial Nitrocellulose From the People's Republic of China,* 55 Fed. Reg. 21,051 (1990) (final determination).

This court also does not view as compelling plaintiff's concern that the absence of an explicit finding would prevent an effective review of the ITA's determination. The final determination here stated that the final margin was calculated through the use of "the highest dumping margin listed in the notice of initiation for this investigation which was based on the petition" as best information available. Both the notice of initiation and the petition specifically explained that a surrogate analysis was used. Therefore, the court can conclusively ascertain which methodology the ITA relied on to calculate the dumping margin. The court can also fully review whether the ITA's use of the surrogate methodology was supported by substantial evidence in the record. The court holds that under these circumstances, 19 U.S.C. § 1677b(c)(4) does not require the ITA to make an express finding in the final determination that India was a significant producer of silicon.

*Best Information Available and Nonmarket Economy Countries:*

Plaintiff challenges the ITA's use of the highest calculated dumping margin as best information available in a nonmarket economy country investigation. In the final determination, the ITA justified its use of this dumping margin by stating:

> Best information available is usually information that is prejudicial to a respondent. This well-established proposition follows from the long-standing tenet that the best information rule is a rule of reasonable adverse inference designed to induce respondents, in the absence of any subpoena power vested in the [Commerce] Department, to submit timely, complete, and accurate questionnaire responses. This is imperative to permit the completion of investigations in accordance with the Act's strict statutory time limits.
>
> When the respondent failed to submit any information in a timely manner for use in this case, the Department could only presume that the withheld information would establish margins in excess of 139.49 percent. Otherwise, in the words of the Federal Circuit, the respondent "knowing of the rule would have produced current information showing the margin to be less." (*Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1190 (Fed. Cir. 1990.) *Silicon Metal From the People's Republic of China,* 56 Fed. Reg. 18,570, 18571–18572 (1991).

Plaintiff contends that the rule of adverse inference should not apply to nonmarket economy producers such as those in the PRC. It argues that in market economy dumping investigations, such as in the *Rhone*

*Poulenc* case, the ITA calculates foreign market value based on home market prices of market economy producers. When a market economy producer fails to submit necessary information, the inference is reasonable because the producer has "special knowledge" of the price information which the ITA will use. However, in nonmarket economy country investigations, the ITA, by statute, will not accept nonmarket economy country prices as a basis for calculating foreign market value. The ITA must use market economy country price data, and nonmarket economy producers have no "special knowledge" of this price information. As a result, plaintiff contends that application of the presumption in these circumstances is unfair.

To the contrary, the court finds that the inference may be applied in a nonmarket economy country investigation without recognizable harm to the nonmarket economy producers. The rationale behind the presumption remains both sensible and sound, and equally applicable in a nonmarket economy country inquiry. Nonmarket producers retain the identical incentive as market economy exporters to provide information to establish a lower dumping margin.

Moreover, advance "special knowledge" of particular price information which may be used by the ITA is not essential to ensure fairness to the producers under investigation. In this case, the PRC was notified by the petition — the earliest possible phase of the investigation — that petitioners considered India to be an appropriate surrogate, and of the estimated dumping margin. The PRC and plaintiff had sufficient opportunity to fully participate in the investigation, provide contradictory information regarding the petitioner's claimed dumping margin, or propose another suitable surrogate. The court determines that the ITA's use of the highest calculated margin as best information available was appropriate in this action.

## CONCLUSION

For the reasons provided above, this court holds that the ITA's final determination regarding sales at less than fair value of silicon metal from the PRC was supported by substantial evidence and was in accordance with law. Accordingly, plaintiff's motion is denied and the determination is sustained.