Borusan Holding A.S. and Borusan Ihracat Ithalat ve Dagitim A.S., plaintiffs *v.* United States, defendant, and Wheatland Tube Co., defendant-intervenor

Court No. 90-11-00602

(Dated April 23, 1992)

*Dickstein, Shapiro & Morin*, (*Arthur J. Lafave III, Jeffrey W. Brennan*), for plaintiffs.
*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Vanessa P. Sciarra*), *D. Michael Kaye*, Of Counsel, Attorney-Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.
*Schagrin Associates*, (*Mark C. Del Bianco*), for defendant-intervenor.

## Memorandum Opinion

Goldberg, *Judge:* This action comes before this court on plaintiffs' objections to the Department of Commerce, International Trade Administration's final results of partial remand and motion for second remand. The court finds that the International Trade Administration's final results of partial remand are not based upon substantial evidence or in accordance with law, and grants plaintiffs' request for a second remand.

### Background

On July 16, 1985, the Standard Pipe and Tube Committee and the Line Pipe Subcommittee of the Committee on Pipe and Tube Imports[1] filed antidumping and countervailing duty petitions. They alleged that welded carbon steel pipe and tube imports from Turkey were being sold in the United States at less than fair value, and were being subsidized by the Turkish government.

After investigation by the Department of Commerce, International Trade Administration ("ITA") and the International Trade Commission, the ITA issued a countervailing duty order with respect to the imported merchandise on March 7, 1986. *See Certain Welded Carbon Steel Pipe and Tube Products from Turkey*, 51 Fed. Reg. 7984 (1986). On May 15, 1986, the ITA also issued an antidumping duty order. *See Welded Carbon Steel Pipe and Tube Products from Turkey*, 51 Fed. Reg. 17784 (1986).

After issuing the orders, the ITA conducted one administrative review of the countervailing duty order pursuant to Section 751 of the Tariff Act of 1930. Additionally, the ITA conducted an administrative review regarding sales between January 3, 1986 to April 30, 1987 with respect to the antidumping duty order. *See Certain Welded Carbon Steel*

---

[1] The Wheatland Tube Company is a member of the Committee on Pipe and Tube Imports, and is the defendant-intervenor in this action.

*Pipe and Tube Products from Turkey*, 53 Fed. Reg. 36932 (1988) (final admin. review). On June 29, 1988, the ITA initiated a second administrative review of the antidumping order covering sales from May 1, 1987 through April 30, 1988. The second review concerned only sales of merchandise exported by plaintiffs.

Plaintiff Borusan Ihracat Ithalat ve Dagitim A.S. is a Turkish exporter of welded carbon steel pipe and tube. Plaintiff Borusan Holding A.S. is the majority shareholder of Borusan Ihracat Ithalat ve Dagitim A.S. It is also a Turkish company. During the period of May 1, 1987 through April 30, 1988, plaintiffs made 312 sales of the subject steel pipe and tube to independent importers in the United States who had no corporate connection with plaintiffs It additionally made 80 sales to Tubeco Pipe and Steel Corporation ("Tubeco"), a Houston, Texas-based importer wholly owned by plaintiffs. In each of the total 392 sales, plaintiffs provided a refund to both Tubeco or the unrelated United States importer in the amount of estimated countervailing duties paid by them.

The ITA issued the final results of its second administrative review on October 18, 1990. *See Certain Welded Carbon Steel Pipe and Tube Products From Turkey*, 55 Fed. Reg. 42230 (1990) (final admin. review). In the final results, the ITA failed to calculate dumping margins for sales made by plaintiffs through Tubeco[2]. It only determined margins for those sales made by plaintiffs directly to unaffiliated American buyers. In the sales it did calculate, the ITA made a downward adjustment to the United States price for the refund which plaintiffs provided to the unrelated importers. The ITA indicated at Comment 8 in the final results that the adjustment to the United States price was appropriate because plaintiffs' agreement to reimburse the unrelated importers for the countervailing duties was "tantamount to a rebate or a reduction in the U.S. sales price." Administrative Record, Public Reel at 265.

In response to the final results of the second administrative review, plaintiffs filed an action in this court challenging the results. In relevant part, plaintiffs claimed in Count One of the Complaint that the ITA neglected to calculate dumping margins sales made through Tubeco to United States customers.[3] Count Two concerned the ITA's failure to make the proper drawback duty adjustment to plaintiffs' United States price. In Count Four, plaintiffs alleged that the ITA inappropriately re-

---

[2] The government asserts that the omission was a technical oversight which occurred as a result of the failure to merge a computer listing of the 80 Tubeco sales with the listing of the 312 direct sales between plaintiffs and independent United States buyers.

[3] Count One provides that:

25. Commerce improperly failed to calculate dumping margins for the U.S. sales made by Borusan through Tubeco, notwithstanding the fact that all such sales during the review period were reported on Borusan's U.S. sales listing. Commerce's failure to calculate margins on the Tubeco sales is not supported by substantial evidence and is otherwise contrary to law.

26. Commerce erroneously did not calculate dumping margins for Tubeco's sales even though (1) the domestic interested parties and Borusan, through submissions dated April 30, 1990 and May 7, 1990, respectively, each alerted Commerce to the identical error in the preliminary determination, and (2) Commerce conceded the error and claimed to have corrected it in the final determination. (Citation omitted.)

duced the United States price by the amount of the countervailing duty imposed, in order to offset the export subsidies assessed.[4]

Defendant United States admitted the allegations contained in Counts One and Two of the Complaint. As a result, on May 3, 1991, Judge DiCarlo of this Court ordered a partial remand to permit the ITA to correct the issues raised in Counts One and Two. The ITA was ordered, in part, to calculate the dumping margin for the United States sales made by plaintiffs through Tubeco.

The ITA then circulated Draft Results of Partial Remand for comment by the parties. In that preliminary determination, the ITA reduced the United States price in the amount of the reimbursement from plaintiffs to Tubeco. Plaintiffs forwarded a response to the ITA in which they argued that the downward adjustment was not appropriate in the Tubeco sales. In this response, plaintiffs based their arguments on the presumption that the ITA reduced the United States price in the Tubeco sales for the identical reasons it did in plaintiffs' direct sales to unrelated purchasers.

The ITA issued its final results of the partial remand on July 5, 1991. The ITA again reduced the United States price of the 80 Tubeco sales in the amount of the rebate plaintiffs provided to Tubeco. It justified its decision by stating that:

> Whether Borusan pays this rebate or refund, or whether Tubeco pays it, is irrelevant. In all cases, the importer of record of the subject merchandise is still reimbursed for any countervailing duties assessed. This reimbursement is a rebate or reduction in U.S. price, and the corresponding downward adjustment to U.S. price was made in accordance with section 772(d)(2)(A) of the Tariff Act.

Administrative Record (Public) Doc. 10.

## DISCUSSION

In the action now before this court, plaintiffs assert that the ITA's decision to reduce the United States price of sales made through Tubeco, by the amount of countervailing duties reimbursed by plaintiffs to Tubeco is not supported by substantial evidence. Defendants allege that plaintiffs raise this issue prematurely, or, alternatively, failed to exhaust their administrative remedies.

### A. Standard of Review:

The ITA's determination shall be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *N.A.R., S.p.A. v. United States*, 14 CIT 409, 741 F. Supp. 936, 939 (1990) (quoting *Gold*

---

[4]Count Four alleged:

32. Commerce's reduction of the U.S. price by the amount of the countervailing duty imposed to offset export subsidies is not supported by substantial evidence and is otherwise contrary to law.

*Star Co. v. United States,* 12 CIT 707, 692 F. Supp. 1382, 1383–1384 (1988) *aff'd,* 873 F.2d 1427 (Fed. Cir. 1989)).

*B. The ITA's Reduction of the United States Price:*

In an antidumping proceeding, the ITA must determine the amount by which the foreign market value of each item of imported merchandise exceeds the United States price. 19 U.S.C. § 1675 (1988). For purposes of this statute, 19 U.S.C. 1677a (1988) defines the United States price as either the "purchase price" or "exporter's sales price" of the merchandise at issue. Purchase price is specifically described under 19 U.S.C. 1677a(b) as:

> [T]he price at which merchandise is purchased, or agreed to be purchased, prior to the date of importation, from a reseller or the manufacturer or producer of the merchandise for exportation to the United States.[5]

The ITA has a longstanding practice of using purchase price as the United States price when domestic sales of the merchandise in question are made to related United States parties providing three qualifications are met. *See e.g. Cellular Mobile Telephones and Subassemblies from Japan,* 56 Fed. Reg. 61400 (1991) (prelim. admin. review); *Brass Sheet and Strip From the Netherlands,* 56 Fed. Reg. 56187 (1991) (prelim. admin. review). In these cases, the manufacturer must ship the merchandise directly to the unrelated buyer, without introducing it into the related selling agent's inventory. This procedure must be the customary sales channel between the parties. The related selling agent located in the United States must act only as a processor of documentation and a communication link with the unrelated buyer.[6] Further, in these cases, the ITA bases the purchase price on the price paid by the unrelated purchaser in the United States. *See e.g. Cellular Mobile Telephones and Subassemblies from Japan,* 56 Fed. Reg. 61400 (1991) (prelim. admin. review); *Brass Sheet and Strip From the Netherlands,* 56 Fed. Reg. 56187 (1991) (prelim. admin. review).

Subsection (b) of 19 U.S.C. 1677a (1988) provides that in purchase price sales:

> [a]ppropriate adjustments for costs and expenses under subsection (d) of this section shall be made if they are not reflected in the price paid by the person by whom, or for whose account, the merchandise is imported.

The Code of Federal Regulations provides similar guidelines to the ITA. It states the ITA is to make:

---

[5] Alternatively, 19 U.S.C. 1677a(c) defines "exporter sales price" as "the price at which merchandise is sold or agreed to be sold in the United States, before or after the time of importation, by or for the account of the exporter * * *."

[6] *See e.g. Polyethylene Terephthalate Film, Sheet, and Strip from Japan* 56 Fed. Reg. 16300 (1991) which provides:
   1. The merchandise in question was shipped directly from the manufacturer to the unrelated buyer, without being introduced into the physical inventory of the related selling agent;
   2. This channel was the customary commercial channel for sales of this merchandise between the parties involved; and
   3. The related selling agent located in the United States acted only as a processor of sales-related documentation and a communication link with the unrelated U.S. buyer.

> appropriate adjustments for costs and expenses * * * if they are not reflected in the sales price to the importer. Whenever purchase price is used and there is reason to believe that the sales price to the importer does not reflect the cost and expenses incident to bringing the merchandise from the country of exportation, then the Secretary will make appropriate adjustments for such costs and expenses * * *.

19 C.F.R. § 353.41(b) (1991).

Pursuant to 19 U.S.C. § 1677a(d)(1)(D), the ITA shall increase the purchase price by the amount of any countervailing duty imposed on the merchandise to offset an export subsidy. Additionally, 19 U.S.C. § 1677a(d)(2)(A) provides that the purchase price shall be reduced by:

> the amount, if any, included in such price, attributable to any additional costs, charges, and expenses, and United States import duties, incident to bringing the merchandise * * * to the United States * * *.

All parties agree that the 80 sales made through Tubeco satisfied the necessary criteria, and it is uncontested that the ITA correctly used "purchase price" as a basis for determining the United States price. It is also conceded that the ITA properly increased the purchase price in the amount of the countervailing duty assessed.

However, plaintiffs challenge the downward adjustment made by the ITA to the purchase price. Plaintiffs assert that the ITA incorrectly reduced the purchase price by the amount which plaintiffs refunded Tubeco for countervailing duties paid by Tubeco. In support of their argument, plaintiffs point out that in purchase price sales, the ITA disregards the international related-party transfer price when determining the purchase price. Rather, it utilizes the price which the related seller, Tubeco in this instance, sells to the first unrelated American buyer. Plaintiffs contend that the record lacks support for the finding that the purchase price does *not* reflect the reimbursement from plaintiffs, as required by 19 U.S.C. § 1677a(b).

The government counters that the importer of record, Tubeco, is reimbursed by plaintiffs for countervailing duties paid by Tubeco. The cost of the duties is therefore absorbed by plaintiffs, rather than Tubeco. As a result, Tubeco is able to lower the United States price (its price to the first unrelated buyer) because Tubeco does not pay the countervailing duties. Therefore, Tubeco need not pass this cost on to the unrelated purchaser. The government can only capture this reduction in the purchase price — or additional "dumping" — by considering it a "cost" or "expense" under 19 U.S.C. § 1677a(d)(2)(A), and reducing the United States price accordingly.

For analysis purposes, the government's argument will be divided into two alternative theories, neither of which the court finds persuasive. The court will first address whether the reimbursement generally is a proper adjustment to the purchase price. Both the controlling statute, 19 U.S.C. 1677a(b), and the implementing regulations, 19 C.F.R.

§ 353.41(b), provide that adjustments should be made for only those costs and expenses which are not reflected in the purchase price. The plaintiffs and the government agree that in this case, the cost of the countervailing duty which plaintiffs sustain permits Tubeco to reduce the United States price. The parties therefore concede that the cost of the reimbursement borne by plaintiffs, rather than Tubeco, is reflected in the purchase price.

Further, the court unsuccessfully reviewed the administrative record for evidence which shows that Tubeco did not reduce its price to the first unrelated buyer as a result of the reimbursement it received. In this review, the record was devoid of any evidence which demonstrates that the reimbursement was not reflected in the purchase price, as 19 U.S.C. 1677a(b) requires.

Consequently, the court finds that the ITA's determination that the cost of the reimbursement is not reflected in the purchase price is not supported by substantial evidence. The cost of the reimbursement from plaintiffs to Tubeco is not a proper reduction in the United States price.

Alternatively, the court notes that even if the government could establish that Tubeco did not reduce the United States price to reflect the reimbursement, the government cannot establish that the reimbursement is properly deductible for a second reason as well. The final results of the first remand noted that a downward adjustment was made in accordance with section 19 U.S.C. 1677a(d)(2)(A). This section permits reductions for amounts attributable to additional costs and expenses incident to importing the merchandise.

At the court's request, the parties examined the administrative record to identify any evidence regarding whether or not any amount in the purchase price between Tubeco and the unrelated buyer was in fact attributable to plaintiffs' "cost" of reimbursing Tubeco for the countervailing duties. In addition, the court independently reviewed the administrative record for the information. Neither the parties nor the court were able to locate any evidence to support the ITA's determination that the purchase price was increased by plaintiffs' "cost" of rebating the countervailing duty to Tubeco. Therefore, the court finds that in these circumstances, a determination by the ITA that an amount in the purchase price was attributable to plaintiffs' reimbursement cost is not supported by substantial evidence in the record. The reduction in the purchase price for the cost of the reimbursement pursuant to 19 U.S.C. 1677a(d)(2)(A) would likewise be an improper adjustment.

## C. Procedural Challenges:

The first issue advanced by defendant is that plaintiffs failed to exhaust their administrative remedies. The government argues that notwithstanding the technical omission in the administrative review of the dumping margins for Tubeco sales, plaintiffs were aware during the agency proceedings that the ITA intended to downwardly adjust "all" purchase prices in the amount of the reimbursement. The government

theorizes that plaintiffs should have known that the purchase price for sales made through Tubeco sales would likewise be included in this reduction. Consequently, plaintiffs were required to challenge the downward adjustment in Tubeco sales during the initial agency proceedings, which they failed to do.

The court agrees with the government that plaintiffs are required to address all relevant issues during the agency proceedings. Section 2637(d) of Title 28, United States Code (1988), provides that the court shall, "where appropriate, require the exhaustion of administrative remedies." (*See also Unemployment Compensation Commission of Alaska v. Aragon*, 329 U.S. 143, 155 (1946) (The "reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action"); *National Knitwear & Sportswear Association v. United States* 15 CIT 548, 779 F. Supp. 1364 (1991).)

However, in this case, plaintiffs were not aware of the ITA's methodology for calculating Tubeco sales' dumping margin until the results of the first remand. Prior to the issuance of those remand results, plaintiffs could not have predicted that the ITA would treat plaintiffs' direct sales to unrelated American purchasers identically with Tubeco's sales to unrelated buyers. Consequently, its first opportunity to challenge the ITA's reduction in the Tubeco sales purchase price was during the remand proceeding. The court finds that therefore, plaintiffs did in fact exhaust their administrative remedies.

The government asserts alternatively that plaintiffs' request for a second remand is premature. It claims that the first remand concerned only Counts One and Two of the Complaint, and the reduction in Tubeco's purchase price can only be raised under Count Four in a U.S.CIT Rule 56.1 brief.

The court again finds the government's position untenable. The challenged administrative review results found dumping margins for plaintiffs' direct sales to unrelated American purchasers only; they omitted findings concerning plaintiffs' sales made through Tubeco. Count Four could not have addressed any reduction in the Tubeco sales purchase price because the ITA had not as yet issued findings concerning Tubeco at the time the Complaint was filed. Indeed, plaintiffs specifically challenged the omission of the Tubeco sales dumping margin in Count One. The court holds that plaintiffs' request for a second remand was made in a timely fashion.

## CONCLUSION

For the reasons provided above, this court holds that the ITA's final results of partial remand were not supported by substantial evidence or in accordance with law. Accordingly, plaintiffs' motion for a second remand is granted.