**Slip Op. 01-118**

**United States Court of International Trade**

<table>
<tr><td>

CHEFLINE CORPORATION, ET AL.,

        Plaintiffs,

    v.

UNITED STATES,

        Defendant,

        and

THE STAINLESS STEEL COOKWARE COMMITTEE,

        Defendant-Intervenor.

</td><td>

Before: Pogue, Judge

Court No. 00-05-00212

**Public Version**

</td></tr>
</table>

[Plaintiff's motion for judgment on the agency record affirmed-in-part and denied-in-part. Agency determination remanded for action consistent with this opinion.]

Decided: September 26, 2001

Hogan & Hartson LLP (Lynn G. Kamarck, Craig A. Lewis), for Plaintiffs.

Lyn M. Schlitt, General Counsel; Marc A. Bernstein, Acting Assistant General Counsel; Laurent M. de Winter, Attorney, Office of General Counsel, U.S. International Trade Commission, for Defendant.

King & Spalding (Joseph W. Dorn, Stephen A. Jones, Christine E. Savage), for Defendant-Intervenor.


**OPINION**

**Pogue, Judge:** Plaintiffs Chefline Corporation, Inc., Daelim Trading Co., Ltd., Dong Won Metal Co., Ltd., Hai Dong Stainless Steel Co., Ltd., Kyung Dong Industrial Do., Ltd., Namyang Kitchenflower Co., Ltd., O'bok Stainless Steel Co., Ltd., and Sam

Yeung Industrial Co., Ltd. (collectively, "Plaintiffs" or "Chefline"), move for judgment upon the agency record pursuant to USCIT Rule 56.2, challenging the U.S. International Trade Commission's ("Commission" or "ITC") final affirmative determination in the five-year administrative review ("sunset review") of antidumping and countervailing duty orders on top-of-the-stove stainless steel cookware from Korea and Taiwan.[1]  See Porcelain-on-Steel Cooking Ware from China, Mexico, and Taiwan, and Top-of-the-Stove Stainless Steel Cooking Ware from Korea and Taiwan, USITC Pub. 3286, Inv. Nos. 701-TA-267 & 268 (Review) and 731-TA-297-299, 304 & 305 (Review) (March 2000) ("Review Determination").  Defendant United States and Defendant-Intervenor The Stainless Steel Cookware Committee ("Committee"), an association of domestic producers of top-of-the-stove stainless steel cooking ware, oppose Plaintiffs' motion.

Plaintiffs challenge several aspects of the Review Determination, including, (1) the Commission's "domestic like product" determination, (2) the Commission's decision to cumulate subject imports from Korea and Taiwan, and (3) the Commission's determinations related to its finding of a likelihood of

_____

[1]The purpose of a sunset review is to determine whether revocation of an antidumping or countervailing duty order would, within a reasonably foreseeable time, likely lead to continuation or recurrence of material injury.  See 19 U.S.C. § 1675(c) (1994).  A finding that material injury would likely continue or recur constitutes an "affirmative determination."

continuation or recurrence of material injury, namely, that, upon revocation of the orders, subject imports would likely increase to significant volume levels, would lead to significant underselling, price depression, and price suppression, and would have a significant adverse impact on the domestic industry. See Pl.'s Br. Supp. Mot. J. Agency R. ("Pl.'s Br.") at 1-4.

For the reasons discussed below, we affirm the Commission's "domestic like product" determination, and remand the Commission's decision to cumulate. The Commission's material injury determination will be reviewed after the remand results on the issue of cumulation are received.

**Background**

In January 1987, the Commission determined that an industry in the United States was materially injured by reason of less than fair value ("LTFV") and subsidized imports of stainless steel cookware from Korea and Taiwan. See Top-of-the-Stove Stainless Steel Cooking Ware from Korea and Taiwan, USITC Pub. 1936, Inv. Nos. 701-TA-267-268 and 731-TA-304-305 (Final), (Jan. 1987) ("Original Determination"). The Department of Commerce ("Commerce") subsequently published antidumping and countervailing duty orders covering the subject merchandise. See Certain Stainless Steel Cooking Ware from the Republic of Taiwan, 52 Fed. Reg. 2,138 (Dep't Commerce Jan. 20, 1987) (antidumping duty order);

<u>Certain Stainless Steel Cooking Ware from the Republic of Korea</u>, 52 Fed. Reg. 2,139 (Dep't Commerce Jan. 20, 1987) (antidumping duty order); <u>Certain Stainless Steel Cooking Ware from the Republic of Korea</u>, 52 Fed. Reg. 2,140 (Dep't Commerce Jan. 20, 1987) (countervailing duty order); <u>Certain Stainless Steel Cooking Ware from the Republic of Taiwan</u>, 52 Fed. Reg. 2,141 (Dep't Commerce Jan. 20, 1987) (countervailing duty order).

On February 1, 1999, the Commission instituted sunset reviews with respect to the orders covering the subject merchandise. <u>See</u> <u>Porcelain-on-Steel Cooking Ware from China and Taiwan</u>, 64 Fed. Reg. 4,896 (Int'l Trade Comm'n Feb. 1, 1999) (instituting five-year reviews). On May 7, 1999, the Commission decided to conduct full reviews with respect to all of the stainless steel cookware orders.[2] On March 17, 2000, the Commission determined that revocation of the countervailing and antidumping duty orders covering top-of-the-stove stainless steel cookware from Korea and Taiwan would likely lead to continuation or recurrence of material injury in the United States within a reasonably foreseeable time. <u>See</u> Review Determ. at 1. Therefore, the antidumping and countervailing duty orders remain in place. <u>See</u> 19 U.S.C. § 1675(d)(2).

---

[2]A full review includes a public hearing, the issuance of questionnaires, and other procedures. Expedited reviews do not include such procedures. <u>See</u> 19 U.S.C. § 1675(c)(3); 19 C.F.R. §§ 207.62-207.68 (1999).

**Standard of Review**

The court will uphold a determination by the Commission unless it is unsupported by substantial evidence in the administrative record or is otherwise not in accordance with the law. See section 516a(b)(1)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

Substantial evidence is "something less than the weight of the evidence." Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966). Nonetheless, the Commission must present "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Gold Star Co. v. United States, 12 CIT 707, 709, 692 F. Supp. 1382, 1383-84 (1988) (internal quotation omitted), aff'd sub nom. Samsung Elec. Co. v. United States, 873 F.2d 1427 (Fed. Cir. 1989). The possibility of drawing two inconsistent conclusions from the same evidence does not mean that the agency's finding is unsupported by substantial evidence. See Consolo, 383 U.S. at 620. In other words, the ITC's determination will not be overturned merely because the plaintiff "is able to produce evidence . . . in support of its own contentions and in opposition to the evidence supporting the agency's determination." Torrington Co. v. United States, 14 CIT 507, 514, 745 F. Supp. 718, 723 (1990) (internal quotation omitted), aff'd, 938 F.2d 1276 (Fed. Cir. 1991).

**Discussion**

**I.    The Commission's "Like Product" Determination**

To determine whether an industry in the United States is materially injured or threatened with material injury by reason of imports of the subject merchandise, the ITC must first define the "domestic like product" and the "industry" producing the product. See 19 U.S.C. §§ 1673(2), 1677(4), 1677(10) (1994).

Section 1677 defines "domestic like product" as "a product which is like, or in the absence of like, most similar in characteristics and uses with the article subject to an investigation."  19 U.S.C. § 1677(10).  In turn, the relevant "industry" is defined as the "producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the product."  19 U.S.C. § 1677(4)(A).

In its final five-year review determinations, Commerce defined the subject merchandise as:

> top-of-the-stove stainless steel cookware from Korea and Taiwan.  The subject merchandise is all non-electric cooking ware of stainless steel which may have one or more layers of aluminum, copper or carbon steel for more even heat distribution.  The subject merchandise includes skillets, frying pans, omelette pans, saucepans, double boilers, stock pots, dutch ovens, casseroles, steamers, and other stainless steel vessels, all for cooking on stove top burners, except tea kettles and fish poachers.

Top-of-the-Stove Stainless Steel Cookware From South Korea, 64 Fed. Reg. 48,374, 48,375 (Dep't Commerce Sept. 3, 1999) (final results

CVD sunset review); <u>Top-of-the-Stove Stainless Steel Cookware From Taiwan</u>, 64 Fed. Reg. 48,372 (Dep't Commerce Sept. 3, 1999) (final results CVD sunset review); <u>Top-of-the-Stove Stainless Steel Cookware From the Republic of Korea and Taiwan</u>, 64 Fed. Reg. 40,570 (Dep't Commerce July 27, 1999) (final results AD sunset reviews).

In its Review Determination, the Commission found that the appropriate like product corresponding to the subject imports of top-of-the-stove stainless steel cookware is domestic top-of-the-stove stainless steel cookware. <u>See</u> Review Determ. at 9. The Commission used the same like product definition that the Commission had adopted in the Original Determination. <u>See</u> Original Determ. at 4.

Chefline opposes the Commission's determination as too narrow, and claims that "the domestic like product includes competing categories of stove top cookware produced from all metals, including aluminum." <u>See</u> Pl.'s Br. at 20. Chefline challenges the Commission's determination in two ways. First, Chefline argues that the Commission acted contrary to law insofar as it "applied a rebuttable presumption that the domestic like product determination made in the original investigation should continue to apply." Pl.'s Br. at 1. Second, according to Chefline, the Commission's determination that there is a "clear dividing line" between stainless steel cookware and all other metallic cookware is not supported by substantial evidence, or otherwise not in accordance

with law.  See id. at 1-2.

**A.    The Commission's Interpretation of the Role of the Original Determination is in Accordance with Law**

19 U.S.C. § 1675a(a)(1)(A) directs the Commission to "take into account its prior injury determinations . . . ."  There is, however, no presumption that the former determination is controlling.  See Asociacion Colombiana de Exportadores de Flores v. United States, 12 CIT 634, 638 n.5, 693 F. Supp. 1165, 1169 n.5 (1988)("[E]ach finding as to like product must be based on the particular record at issue including the arguments raised by the parties.").  The Commission has interpreted § 1675a(a)(1)(A) to include its prior like product determinations.  See Review Determ. at 7; see also, e.g., Stainless Steel Plate from Sweden, USITC Pub. 3204, Inv. No. AA-1921-114 (Review) at 8 (July 1999).  The Commission "may revisit its like product determination when there have been significant changes in the products at issue since the original investigation . . . ."  Rules of Practice and Procedure, 63 Fed. Reg. 30,599, 30,602 (Int'l Trade Comm'n June 5, 1998). Here, the Commission did revisit its original like product determination, and concluded that "[t]he record . . . does not provide any reason to depart from the finding in the original investigation that domestically produced top-of-the-stove stainless steel cookware is the like product for the subject merchandise."

Review Determ. at 9.

Chefline does not challenge the Commission's interpretation of the statute to include a prior like product determination, but asserts that the Commission acted contrary to law because, rather than "revisiting" the like product issue, it "improperly presumed the continued applicability of its original like product determination . . . ." Pl.'s Br. at 24. It is well established that, "because of the factual nature of such investigations, a domestic like product finding in one investigation is not dispositive of another like product investigation." Acciai Speciali Terni S.p.A. v. United States, 24 CIT __, __, 118 F. Supp. 2d 1298, 1304 (2000) (citing Nippon Steel Corp. v. United States, 19 CIT 450, 454-55 (1995)) ("AST").

It is apparent from the Review Determination, however, that the Commission did not consider the like product finding of the Original Determination to be either "dispositive" or to create a "rebuttable presumption" for purposes of the sunset review; rather, it regarded it as its "starting point." Review Determ. at 7. This interpretation is entirely consistent with the statute's directive to take prior findings "into account," and Chefline itself agrees that the prior like product finding is "relevant" to the like product finding in the sunset review. Pl.'s Br. at 24; see also AST, 24 CIT at __, 118 F. Supp. 2d at 1304-05 ("Where, as here, the ITC has addressed similar or identical facts, no statute or case

authority prohibits it from drawing upon its previous work in addressing the issue at hand . . . . In fact, to find otherwise would require the ITC to ignore its institutional experience and make each like product determination in a vacuum -- an impractical conclusion which cannot be reasonably endorsed.").

Moreover, it is clear that the Commission in fact considered changes in the product or industry, and thus "revisited" the like product issue in some meaningful way. The Commission noted Chefline's disagreement with maintaining the original like product determination, see Review Determ. at 7, and emphasized that it had "considered the similarities between top-of-the-stove stainless steel and aluminum cookware." Id. at 10; see also Porcelain-on-Steel Cooking Ware from China, Mexico, and Taiwan, and Top-of-the-Stove Stainless Steel Cooking Ware from Korea and Taiwan, USITC Pub. INV-X-046, Inv. Nos. 701-TA-267 & 268 (Review) and 731-TA-297-299, 304 & 305 (Review) at I-18 - I-30 (March 2000) ("Confidential Report"). Indeed, the Commission stated that it considered the changes in the product and industry "to be most pronounced in the comparison of top-of-the-stove stainless steel cookware with aluminum cookware." Review Determ. at 9 n.47. The Commission also made clear that it based its like product determination on the "relevant factors in this review," id. at 10 (emphasis added), thus indicating that it had not simply adopted the like product finding of the Original Determination, or presumed it to continue to apply.

Chefline further claims that, as a result of the Commission's presumption that the original like product determination continued to apply, it "failed to give sufficient consideration to intervening changes in the product and industry." Pl.'s Br. at 24. Because this is a claim that the Commission did not offer substantial evidence to support its conclusion that these changes did not affect the original like product determination, it is addressed below.

**B.    The Commission's Like Product Determination is Supported by Substantial Evidence and Otherwise in Accordance with Law**

The Commission's decision regarding the appropriate domestic like product is a factual determination, in which the Commission applies the statutory standard on a case-by-case basis. See, e.g., Torrington Co. v. United States, 14 CIT 648, 652 n.3, 747 F. Supp. 744, 749 n.3 (1990), aff'd, 938 F.2d 1278 (Fed. Cir. 1991); Asociacion Colombiana, 12 CIT at 638 n.5, 693 F. Supp. at 1169 n.5. We review the Commission's determination for substantial evidence, bearing in mind that "it is not the province of the courts to change the priority of the relevant like product factors or to reweigh or judge the credibility of conflicting evidence." Chung Ling Co. Ltd. v. United States, 16 CIT 636, 648, 805 F. Supp. 45, 55 (1992); see also NEC Corp. v. United States, 22 CIT 1108, 1111,

36 F. Supp. 2d 380, 384 (1998) (holding that whether the differences between products are minor or significant is a factual determination within the discretion of the Commission). Furthermore, "[t]he finding of some similarities among the products delineated by the Commission is not sufficient to overturn the determination[] when there is otherwise substantial evidence to support its findings." Torrington, 14 CIT at 656, 747 F. Supp. at 753.

The ITC has generally sought "clear dividing lines" between domestic product groups, disregarding minor variations. See, e.g., Aramide Maatschappij V.O.F. v. United States, 19 CIT 884, 885 (1995); Nippon Steel Corp. v. United States, 19 CIT 450, 455 (1995). Factors that the ITC typically considers in defining "like product" include: (1) physical appearance, (2) interchangeability, (3) channels of distribution, (4) customer perceptions, (5) common manufacturing facilities and production employees, and, where appropriate, (6) price. See Torrington Co., 14 CIT at 652, 747 F. Supp. at 749. In this case, the Commission found "significant differences" between domestic top-of-the-stove stainless steel and aluminum cookware, citing in particular different physical characteristics and end uses, limited interchangeability, different channels of distribution, and the lack of common manufacturing facilities, equipment and workers. See Review Determ. at 9-10,

citing The Cook's Wares, Consumer Reports, P.R. Doc. No. 201,[3] Nov. 1998, at 40, 43 (indicating greater heat conductivity of aluminum cookware); Hearing Tr., P.R. Doc. No. 180 at 21, 24, 74 (March 3, 2000) (indicating that aluminum offers even heat distribution, may be treated with nonstick coatings, and is superior to stainless steel for frying, while stainless steel is dishwasher safe and is superior in durability and non-reactivity with food); Cookware Manufacturers' Association, CMA Guide to Cookware and Bakeware, P.R. Doc. No. 134 at Ex. 4 (discussing the use, care, and characteristics (including heat conductivity, use of nonstick coatings, and durability) of cookware made of different materials); Confidential Report at I-21 - I-22 (stating that "equipment and workers used in the production of top-of-the-stove stainless steel cookware could not be used to produce other types of cookware"); Public Staff Report, Porcelain-on-Steel Cooking Ware from China, Mexico, and Taiwan, and Top-of-the-Stove Stainless Steel Cooking Ware from Korea and Taiwan, USITC Pub. No. 3286, Inv. Nos. 701-TA-267 & 268 (Review) and 731-TA-297-299, 304 & 305 (Review) at I-16 (March 2000) ("Public Report") (noting same); Confidential Report at I-24, Public Report at I-18 (noting that distribution of stainless steel top-of-the-stove cookware is concentrated in direct sales, while distribution of aluminum cookware is concentrated in

---

[3]Cites to the administrative record specify whether reference is made to a public document ("P.R.") or to a confidential document ("C.R.").

retail sales).

The Commission noted some "similarities" between the two products, such as purchaser responses indicating that all categories of cookware are essentially substitutable, and product information suggesting that the prices charged for stainless steel and aluminum cookware overlap to a large extent. See Review Determ. at 10. Nonetheless, the Commission concluded that a "clear dividing line" exists between domestic stainless steel cookware and domestic aluminum cookware. Id.

Chefline argues that the Commission's conclusion was "based on trivial or meaningless distinctions between the products and . . . ignored the overwhelming evidence of a nearly complete overlap between the product categories with regard to each of the Commission's traditional six like product factors." Pl.'s Br. at 24. In a like manner, Chefline claims that the Commission "failed to give sufficient consideration to intervening changes in the product and industry." Id.

Despite Chefline's assurances to the contrary, see Pl.'s Reply Br. at 25-27, it is difficult to understand how asking the Court to decide that distinctions the Commission regarded as "significant" are, in fact, "trivial or meaningless," or to decide that the Commission "failed to give sufficient consideration" to certain evidence, is not asking the court to reweigh that evidence, "and generally substitute the court's judgment on factual matters

committed to the Commission's expertise and role as the finder of fact." Chung Ling, 16 CIT at 649, 805 F. Supp. at 55-56. Chefline's claimed evidence of some "overlap" between domestic products similarly fails to invalidate the Commission's findings, if those findings are otherwise supported by substantial evidence. See Torrington, 14 CIT at 656, 747 F. Supp. at 753. As to Chefline's assertion that the Commission "ignored" the evidence of overlap, it is well established that, "absent a showing to the contrary, the agency is presumed to have considered all of the evidence in the record." USEC, Inc. v. United States, slip op. 01-58, at 7 (CIT May 17, 2001) (citing Nat'l Ass'n of Mirror Mfrs. v. United States, 12 CIT 771, 779, 696 F. Supp. 642, 648 (1988)). The evidence in the record reflects sufficient differences in characteristics, end uses, and production and distribution processes to support the Commission's determination that there exists a "clear dividing line" between domestic stainless steel cookware and domestic aluminum cookware.

Chefline also asserts that the ITC, in making its like product determination, departed from its prior practice "by arbitrarily dividing a single continuum of products." Pl.'s Reply Br. at 2. According to the "continuum principle":

> [M]inor physical differences in a product should not be permitted to obscure competitive realities. Accordingly, if there is a "continuum" of products slightly distinguishable from each other, among which no clear dividing lines can be drawn based on characteristics and

uses, the Commission will treat the merchandise as a single like product. . . . The focus of the "like product" analysis therefore should be on competition in the marketplace and whether the domestic article competes with, and is in a position to be injured by, the imported article.

Pl.'s Reply Br. at 4-5 (quoting Legal Issues in Certain color Television Receivers from the Republic of Korea and Taiwan, USITC Pub. GC-G155, Inv. Nos. 731-TA-134 & 135 (Mem. from Gen. Counsel) at 10-11 (June 1983)). Chefline maintains that, if the Commission had followed its previous practice, it would have included domestic aluminum cookware in the "domestic like product."[4] Id. at 11.

Chefline's claim of departure from prior practice would perhaps have merit if it were the case that the Commission found a "continuum" of domestic products, then "artificially divided" it by ignoring "minor differences" or "competitive realities." Here, however, the Commission concluded that the differences between

_____

[4]To the extent that Chefline is asserting that the Commission departed from a prior practice of defining "like product" more broadly than it did here in similar cases, this court recently held that there is no support in the legislative history or case law for the view "that the Commission should seek to define the 'domestic like product' broadly. Rather, this authority simply cautions that the ITC should not define the domestic industry too narrowly, since to do [so] might deny relief to an industry adversely affected by unfairly-traded imports." AST, 24 CIT at __, 118 F. Supp. 2d at 1303. Chefline points in vain to cases that resulted in like product determinations that it perceives to be "broader" in a way favorable to its cause. See Pl.'s Reply Br. at 6-12. "These dissimilar results demonstrate that every like product determination must be based on the particular record at issue and the unique facts of each case." NEC, 22 CIT at 1111, 36 F. Supp. 2d at 384.

domestic aluminum and stainless steel cookware are significant, and that therefore there is not a "continuum" of products, but rather a "clear dividing line" between them. Chefline's simple disagreement with the Commission's conclusion is not a reason to disturb the Commission's holding, for "[i]t is within the Commission's discretion to make reasonable interpretations of the evidence and to determine the overall significance of any particular factor or piece of evidence." Maine Potato Council v. United States, 9 CIT 293, 300, 613 F. Supp. 1237, 1244 (1985).

Having carefully reviewed the Review Determination and the underlying record, this Court concludes that the Commission's determination that domestic stainless steel cookware is the domestic like product is supported by substantial evidence. Chefline has presented no argument that demonstrates that the Commission drew an invalid conclusion from the evidence on the record; Chefline succeeds only in showing that a different conclusion could have been drawn from this evidence.

## II.  The Commission's "Cumulation" Determination

The statute provides that:

The Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which the reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States market. The Commission shall not cumulatively

assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry.

19 U.S.C. § 1675a(a)(7). In the Review Determination, as it had in the Original Determination, the Commission decided to cumulate imports of the subject merchandise from Korea with those from Taiwan. See Review Determ. at 23-26.

Chefline objects to the Commission's cumulation decision on two grounds: first, that the Commission failed to provide substantial evidence in support of its conclusion that there is a reasonable overlap of competition between imports from Korea and imports from Taiwan, see Pl.'s Br. at 39-42; and second, that the Commission acted contrary to law in failing to explain its conclusion that "the Prevailing Commissioners did not find that the subject imports [from either of the subject countries] are likely to have no discernible adverse impact on the domestic industry if the orders are revoked." See id. at 43-44; Review Determ. at 24.

Defendant responds first to the latter charge, asserting that it based its conclusion of "discernible adverse impact" on "findings [that] appear throughout the Commission's discussion of cumulation." Def.'s Mem. Opp. Pl.'s Mot. J. Agency R. ("Def.'s Mem.") at 38. Defendant is apparently referring to a section called "Other Considerations," see Review Determ. at 25-26, that lists the findings Defendant avers support the Commission's

conclusion.  <u>See</u> Def.'s Mem. at 38-40.  While these "other considerations" may be legitimately viewed as addressed to the "no discernible adverse impact" provision, <u>see</u> Review Determ. at 25 n.166 (comparing the majority's analysis in the section to that of Chairman Bragg's dissenting views on "no discernible adverse impact"), the Commission's findings do not provide substantial evidence in support of its conclusion that the subject imports from each country are likely to have a discernible adverse impact on the domestic industry if the orders are revoked.

The Commission made three findings in support of its conclusion.  First, that Korean and Taiwanese manufacturers had demonstrated an ability to increase their exports to the United States market when conditions warrant, <u>see</u> Review Determ. at 25-26; second, that the cookware industries in Korea and Taiwan are export oriented, <u>see</u> <u>id.</u> at 26; and third, that both Korean and Taiwanese cookware is present in the direct sales channel of distribution and those producers have the incentive to increase sales into that channel in competition with the bulk of domestic products.  <u>See</u> <u>id.</u>

This court has explained that, pursuant to 19 U.S.C. § 1675a(a)(7):

> [A]n affirmative finding of discernible impact is only part of the answer to the question of whether cumulation is precluded.  In other words, the first question is whether the imports are likely to have any such impact.  If not, the ITC is precluded from cumulating.  If yes, then the question remains whether that impact is also adverse.

Neenah Foundry Co. v United States, slip op. 01-77, at 17-18 (CIT June 25, 2001).  The Court will not simply assume that any discernible impact is necessarily adverse.  See id.

Upon review, this Court concludes that the Commission has failed to provide substantial evidence for its conclusion that Taiwanese imports of subject merchandise would have even a discernible impact on the domestic industry, much less an impact that would be adverse.  The United States industry, as acknowledged by the Commission, produces only high-end top-of-the-stove stainless steel cookware.  See Review Determ. at 24.  Taiwan, on the other hand, exports primarily low-end and mid-range products to the United States.  See id. at 24, Table I-4 (revealing substantially lower total value and average unit value for Taiwanese imports compared to Korean imports).[5]  Thus, even if the Taiwanese industry is able to increase exports to the United States market and is in fact "export oriented," these findings, standing alone, do not establish that Taiwanese exports would be of high-end

---

[5] Nowhere in its determination is there any indication that the Commission relied on competition between low-end and high-end products.  Rather, the Commission determined that "[t]he most notable change since the original determination is that the remaining domestic producers make only high-end top-of-the-stove stainless steel cookware."  Review Determ. at 24.  Moreover, the Commission noted that "nonsubject imports, which were primarily low-end and mid-range products from China, India, Indonesia, and Thailand, accounted for a large and growing share of the U.S. market, in terms of both volume and value.  We find that this low-end and mid-range merchandise competes with the domestic like product to a lesser degree."  Review Determ. at 28.

products, such that they would impact the domestic industry at all, much less adversely.

Further, the Commission cites <u>no</u> relevant evidence in support of its finding that Taiwanese producers have an incentive to increase sales in the direct sales channel.[6]  And while there is some evidence that Taiwanese products have been sold to distributors considered to engage in direct sales, <u>see</u> Review Determ. at 25 n.164, there is insubstantial evidence to support the Commission's related finding that Taiwan exports high-end cookware such that it would compete with and harm the domestic industry. <u>See</u> <u>id.</u> at 24-26 & n.160.  The Commission relies on the evidence cited in its "reasonable overlap of competition" analysis to support this finding.  <u>See</u> <u>id.</u> at 24-25 & n.160.  This analysis recognizes that "[s]ubject imports from Taiwan have a low average unit value relative to subject imports from Korea and the domestic like product, which suggests a preponderance of low-end and mid-range products," yet concludes that "subject merchandise from Taiwan includes at least some high-end cookware."  <u>Id.</u> at n.160.

The Commission first cites testimony from the president of domestic producer and Committee member Regal Ware, who states,

---

[6]The evidence establishes only that non-subject countries produce low-end and mid-range products, and says nothing to indicate that the Taiwanese response would be to upgrade its product rather than compete with the non-subject countries. <u>See</u> Hearing Tr. at 57, 121-23; Field Trip Notes, C.R. Doc. No. 246 (Jan. 21, 2000).

"[T]o the best of my knowledge, there are no Taiwanese specific cook ware set programs.  There are Taiwanese pieces of cook ware that are sold through direct sales and add on.  It <u>may</u> be a premium that goes with a set."  Hearing Tr. at 113 (emphasis added).  While there may be pieces of Taiwanese cookware sold through the direct sales channel, this anecdotal testimony offers only speculative evidence that such cookware is high-end.[7]  In any event, even assuming there are some high-end imports of Taiwanese imports, there is no evidence that such imports would adversely affect the domestic industry.

The Commission next cites to the Committee's Prehearing Brief, which makes the unremarkable observation that the higher unit value of some individual pieces in a set of Taiwanese cookware is not reflected in the average unit value of Taiwanese imports, which also includes lower-priced pieces such as lids and other parts of stainless steel cookware.  <u>See</u> Committee Prehearing Br., C.R. Doc. No. 11 at 39, P.R. Doc. No. 134 at Ex. 15 (Jan. 11, 2000).  The Committee presents import statistics that exclude Taiwanese imports

---

[7]This testimony continues, "The real issue here is the fact that the Taiwanese do produce a product of equal quality . . . . And as we've talked about the Taiwanese products that are here at the end of the table, <u>although they are not cook ware products</u>, they are produced on the exact same equipment and produced in the exact same way, so that it would easily, easily transferrable from kitchenware to cook ware."  Hearing Tr. at 113 (emphasis added).  Again, this evidence is purely speculative, and emphasizes the lack of concrete data or trends upon which to base the Commission's finding that high-end cookware is or will be exported from Taiwan to the United States.

valued at less than six dollars – a figure it deems "comparable" to the average unit value of Korean cookware[8] - and based on these statistics, urges that "the Commission should not infer from the low unit value of the imports from Taiwan that premium stainless steel cookware is not being imported from Taiwan." Committee Prehearing Br., C.R. Doc. No. 11 at 39 (Jan. 11, 2000). While there may be some pieces of Taiwanese cookware that are priced higher than six dollars per unit, that fact is not meaningful when the comparison figure used is the <u>average</u> unit value for Korean cookware, which includes the same lower-priced pieces that were excluded from the Taiwanese statistics. The Committee's statistics fail to make a fair comparison, and thus are not evidence that Taiwan is producing high-end stainless steel cookware.

Lastly, the Commission cites to an affidavit discussing [



]. <u>See</u> Committee's Prehearing Br., C.R. Doc. No. 11 at Ex. 41. This is purely circumstantial evidence that Taiwanese producers export high-end subject merchandise to the United States, and, given the complete lack of direct evidence to otherwise support this conclusion, cannot be deemed substantial.

Though the Court recognizes that the Taiwanese producers did

---

[8]The Korean producers report that in 1998, the average unit value for Korean imports of the subject merchandise was $9.25 per piece. <u>See</u> Korean Producers' Response, P.R. Doc. No. 36 at 29 (Mar. 23, 1999); Review Determ. at Table I-4.

not cooperate in this investigation, the evidence on the record is simply not "such relevant evidence as a reasonable mind might accept as adequate to support" the Commission's conclusion that high-end cookware is being, or will be, exported from Taiwan to the United States. Gold Star, 12 CIT at 709, 692 F. Supp. at 1383-84. Consequently, the Commission has failed to provide substantial evidence in support of its conclusion that subject imports from Taiwan are likely to have a discernible adverse impact upon the domestic industry if the orders are revoked. Furthermore, the Commission's conclusion that there is a reasonable overlap of competition between Taiwanese and Korean and Taiwanese and domestic products relies to a great extent on finding that all three countries produce high-end merchandise. See Review Determ. at 24.

As to Korea, it is undisputed that most Korean exports are of high-end cookware, see Pl.'s Br. at 39, and that at least some Korean cookware is sold in the direct sales channel. See id. at 47. There is thus substantial evidence supporting the Commission's conclusion that there would be a likely discernible impact on the domestic industry if the orders on Korean subject merchandise were revoked.[9]

Whether that impact would be adverse depends on the

---

[9]This uncontested evidence also supports a finding that imports from Korea compete with domestic cookware, but, as described above, the Court cannot conclude that Korean imports and Taiwanese imports compete for purposes of a cumulation determination.

Commission's findings regarding Korean export orientation and "flexibility to increase exports" of high-end products in a significant quantity and in a significant proportion through the direct sales channel such as to adversely affect the domestic industry. Review Determ. at 24. The purported ability of Korean producers to increase exports to the United States is based on evidence that imports of subject merchandise from Korea from all producers "increased by more than 70% in the first nine months of 1999," compared to the same period in 1998, and that the imports from non-responding Korean producers increased during the same period by 146%. See Review Determ. at 26 n.167. Chefline objects to the method used by the Commission to arrive at these figures, which subtracted the volume of imports of cookware reported by the responding firms from the total volume of imports under subheading 7323.93.0030, HTSUS, to arrive at the volume of subject imports from nonresponding firms. See Pl.'s Br. at 34; Def.'s Mem. at 34. Chefline claims that the Commission's method overstates the imports from non-responding producers. See Pl.'s Br. at 34.

The Court agrees that, on the basis of the record presented here, the methodology used by the Commission cannot be sustained, and orders the Commission to address the issue on remand.[10] Most

_____

[10]Defendant contends that Plaintiffs failed to exhaust their administrative remedies with regard to this issue. See Def.'s Mem. at 36-37. Plaintiffs assert, to the contrary, that they "had no opportunity to comment on this methodology at the administrative level since the first time these calculations were

importantly, the Commission used a similar calculation in the Original Determination, but adjusted the total volume of imports to account for the volume and quantity of non-subject merchandise classified under the equivalent subheading of the TSUS.  See Original Determ. at A-34 & n.1, A-35 (Table 17) & n.1; Review Determ. at I-13 n.12 (noting that "subheading 7323.93.00 covers a range of products of stainless steel").  While it was reasonable for the Commission to rely on official import statistics given the lack of other data, it was not reasonable for the Commission to change its methodology without explanation.  See Allegheny Ludlum Corp. v. United States, 24 CIT __, __, 112 F. Supp. 2d 1141, 1147 (2000).

Moreover, the evidence the Commission cites in support of its finding that imports from Korea increased shows that imports from the responding producers in fact decreased over the relevant time period.  See Review Determ. at Table IV-6.  This means that all of the substantial increase of imports of Korean cookware found by the Commission is attributable to non-responding firms only.  Given that the classification statistics relied on include a variety of stainless steel products, the Commission should at least consider

performed was in the context of the Commission's [Remand Determination]."  Pl.'s Br. at 33 n.93.  The Court agrees with Plaintiffs that, even though the official import statistics were set forth earlier in the administrative process, Plaintiffs could not know how the Commission would use those statistics until the Review Determination was issued.  Thus, there was no burden on the Plaintiff to object at an earlier stage.

whether it accurately attributed all the imports not claimed by responding firms to non-responding firms, or whether some of the imports not claimed by responding firms were in fact not of the subject merchandise.  The Commission should also consider whether using a value-based instead of a quantity-based statistic would, as Chefline suggests, give a more accurate picture of imports of Korean subject merchandise.  See Pl.'s Br. at 37.

On remand, the Commission is required to address the deficiencies in the evidence discussed above.  The Commission must reconsider its finding that the subject imports from each country are likely to have a discernible adverse impact, and explain its finding in the manner described in Neenah Foundry.  Further, the Commission must reconsider its finding that there is a reasonable overlap of competition between Korean and Taiwanese cookware and domestic and Taiwanese cookware, given the lack of substantial evidence that Taiwanese producers sell high-end products, and the scant evidence that Taiwanese producers sell through the direct sales channel of distribution.  If the Commission decides not to cumulate, the Commission is instructed on remand to revisit its determination that revocation of the orders would, within a reasonably foreseeable time, likely lead to continuation or recurrence of material injury to the domestic industry, considering separately the likely volume, the likely price effects, and the

likely impact of imports from Korea and Taiwan.


## Conclusion

The Commission shall reconsider its determination in a manner consistent with this opinion, pursuant to 19 U.S.C. § 1516a(c)(3). The Commission shall file its remand determination with the Court within 90 days.  Plaintiffs are granted 30 days to file comments on the remand determination.  The Commission may respond to any comments filed within 20 days.

_____

Donald C. Pogue
Judge


Dated:     September 26, 2001
           New York, New York